## T. J. Moss Tie Co. v. Phelps.

(Decided May 25, 1911.)

### Appeal from Butler Circuit Court.

1. Contract—Breach—Action for Damages—Diligence of Seller—In an action for damages for breach of contract to receive and pay for ties at market price, on the day of delivery, reasonable diligence on the part of the seller to dispose of the ties and minimize the damages, does not require him to sell to a party whose checks are not being paid.

2. Measure of Damages—If after a purchaser of ties declines to receive and pay for them, it leads the seller to believe that it will take the ties in a short time, but fails to do; the measure of damages is the difference between the market price at the time of delivery, and the market price at the same place after giving the purchaser a reasonable time to take them.

N. T. HOWARD and J. D. BUNCH for appellant.

W. A. HELM, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellee, Charlie Phelps, brought this action against appellant, T. J. Moss Tie Company, to recover damages for breach of contract. The jury awarded him damages in the sum of $260. From the judgment based upon the verdict, the T. J. Moss Tie Company appeals.

Appellant is engaged in the business of purchasing ties on Green River and shipping them to various railroad companies. Appellee claims that John W. Beasley, appellant's agent, told him to buy the Keown black oak timber and the company would take the ties and pay him therefor the market price of ties at the time of delivery and one cent per tie commission. Pursuant to this agreement he bought the Keown timber and had the ties made and placed on the yard. There were 1,025 ties in the lot. Thereupon appellant's agent wrote him a letter to the effect that the company would not take the ties. A few days later appellant's agent called at appellee's home and spent the night. While there he told appellee that he had been instructed by his company not to give any more checks, but that he thought the panic would not last long and the company would then take the ties. He further promised to write to the company to see whether or not they would consent to take the ties. Appellant's agent claims that the contract he had with appellee was, that if, when he came around on his trip taking up ties, they could agree, he would take the ties, but that either had the right to refuse, and in declining to take the ties he simply took advantage of this option. It also appears that appellant's agent had seen a man by the name of Dalton, who represented the Indiana Tie Company, and that Dalton sent word through him to appellee that he (Dalton) would take the ties at thirty-five cents. This happened during the first part of the week, and on Saturday of the same week all the tie companies stopped purchasing ties. At the time the ties were placed for delivery, they were worth thirty-five cents. As soon as appellee ascertained finally that the company would not take the ties, all the tie companies had stopped buy-

ing, and the price of ties fell to ten cents. Appellee claims that the reason he did not sell to Dalton was because Dalton's checks were not being paid; that he did not care to sell to him under the circumstances, and run the risk of not getting his money.

The instructions properly submitted the question whether or not there was a contract between appellee and appellant, and also gave the correct measure of damages.

Appellant contends, however, that, inasmuch as Dalton had agreed to take the ties and pay appellee therefor the market price of thirty-five cents, it became the duty of appellee to sell to Dalton, and he could not thereafter recover of appellant because of his failure to use reasonable diligence to sell the ties. It is, therefore, insisted that the court should have instructed the jury peremptorily to find for appellant. Inasmuch, however, as there was evidence tending to show that Dalton's checks were not being paid, appellee was under no duty to sell to him. In such a case, reasonable diligence does not require the vendor to dispose of his property to a party whose checks are not being paid. Under the instructions given, the jury were told if they believed from the evidence that, at the time appellant refused to take the ties, appellee could have sold them to Dalton for thirty-five cents, then it was appellee's duty to sell said ties at that time and at that price, unless they believed that appellee in good faith believed that Dalton's check for said ties would not be good, in which event appellee was under no duty in law to sell to Dalton. This instruction was proper.

Appellant also complains of one of the instructions to the effect that, although the jury might believe that appellee, at the time appellant refused to take said ties, might have sold them to another person at the same price appellant was to pay under the contract and at the same place, still, if they believed that appellant, through its agent, led appellee to believe it would take said ties in a short while at the market price at the time of delivery, appellee had a right to wait a reasonable time to let appellant have them, and if during this time the price of ties declined, then the measure of damages was the difference, if any, between the market price at the time of delivery, and the market price at the same place after giv-

ing appellant a reasonable time to take them. After a careful reading of the record, we conclude that the evidence was sufficient to justify the giving of this instruction, and that it admirably presented the law of the case.

Finding no error in the record prejudicial to the substantial rights of appellant, the judgment is affirmed.